Jennifer L. Coden, Esq. (JC5573)
Jcoden@jennifercodenlaw.com
LAW OFFICES OF JENNIFER L. CODEN, PLLC
100 Crossways Park Drive West, Suite 212
Woodbury, New York 11797

*Attorney for the Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JENNIFER CODEN; LINDSAY RENERT; JEFFREY RENERT; LILI HUGHES; THOMAS COVALLO; ALYSSA NIGHTINGALE; GISELA NIGHTINGALE; TED KURTZ: MARITZA KURTZ, JOHN THRUSH; JAMES BURGER; and NORA NELLIS;<br><br>         Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LISA F. GARCIA, REGIONAL ADMINISTRATOR OF THE ENVIRONMENTAL PROTECTION AGENCY; SUFFOLK COUNTY, NEW YORK; SUFFOLK COUNTY DEPARTMENT OF HEALTH SERVICES, NEW YORK; WALTER DAWYDIAK; NEW YORK DEPARTMENT OF ENVIRONMENTAL CONSERVATION; N A M R E S I   C O N S T R U C T I O N   & DEVELOPMENT CORP.; OYSTER BAY MANAGEMENT CO, LLC; LESSING'S FOOD SERVICE MANAGEMENT CORP, doing business as SANDBAR; LESSING'S FRANCHISE GROUP, INC. doing business as SANDBAR; LESSING'S NY CORP doing business as SANDBAR; LESSING'S RESTAURANT SERVICES, INC. doing business as SANDBAR; LESSING'S, INC. doing business as SANDBAR; and MARK LESSING,<br><br>         Defendants. | Civil Action No.:<br><br>_____<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

## COMPLAINT FOR DAMAGES
## AND DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs JENNIFER CODEN; LINDSAY RENERT; JEFFREY RENERT; LILI HUGHES; THOMAS COVALLO; ALYSSA NIGHTINGALE; GISELA NIGHTINGALE; TED KURTZ: MARITZA KURTZ, JOHN THRUSH; JAMES BURGER; and NORA NELLIS (hereinafter "Plaintiffs" or "Spring Street Residents"), by and through their undersigned counsel of record, by way of this Complaint against the Defendants UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LISA F. GARCIA, REGIONAL ADMINISTRATOR OF THE ENVIRONMENTAL PROTECTION AGENCY; SUFFOLK COUNTY, NEW YORK; SUFFOLK COUNTY DEPARTMENT OF HEALTH SERVICES, NEW YORK; WALTER DAWYDIAK; NEW YORK DEPARTMENT OF ENVIRONMENTAL CONSERVATION; NAMRESI CONSTRUCTION & DEVELOPMENT CORP.; OYSTER BAY MANAGEMENT CO, LLC; LESSING'S FOOD SERVICE MANAGEMENT CORP, doing business as SANDBAR; LESSING'S FRANCHISE GROUP, INC. doing business as SANDBAR; LESSING'S NY CORP doing business as SANDBAR; LESSING'S RESTAURANT SERVICES, INC. doing business as SANDBAR; LESSING'S, INC. doing business as SANDBAR; and MARK LESSING, hereby alleges with knowledge with respect to its own acts and upon information and belief with respect to all others.

Plaintiffs respectfully request that this Honorable Court grant the following relief:

a) Declare Defendant Oyster Bay Management Co, LLC to have violated and to be in violation of the New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for the illegal discharges and sanitary system overflows of the Sandbar restaurant since at least June 20, 2018;

Page -2-

b) Declare Lessing's Food Service Management Corp. to have violated and to be in violation of the New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for the illegal discharges and sanitary system overflows of the Sandbar restaurant since at least June 20, 2018;

c) Declare Lessing's Franchise Group to have violated and to be in violation of the New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for the illegal discharges and sanitary system overflows of the Sandbar restaurant since at least June 20, 2018;

d) Declare Lessing's NY Corp. to have violated and to be in violation of the New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for the illegal discharges and sanitary system overflows of the Sandbar restaurant since at least June 20, 2018;

e) Declare Lessing's Restaurant Services, Inc. to have violated and to be in violation of the New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for the illegal discharges and sanitary system overflows of the Sandbar restaurant since at least June 20, 2018;

f) Declare Lessing's, Inc. to have violated and to be in violation of the New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for the illegal discharges and sanitary system overflows of the Sandbar restaurant since at least June 20, 2018;

g) Declare Defendant Mark Lessing to have violated New York Penal Law § 175.35 in offering a false instrument for filing with a public authority, public servant, or public office in order to fraudulently secure approval of an Application for Sewage Disposal Facilities and Water

Supply Systems for Other Than Single Family Residences executed on or about December 12, 2019;

h) Declare Defendant Mark Lessing to have violated New York Penal Law § 210.45 in offering a false written statement to the Suffolk County Department of Health Services in order to fraudulently secure approval of an Application for Sewage Disposal Facilities and Water Supply Systems for Other Than Single Family Residences executed December 12, 2019;

i) Declare Defendant Mark Lessing to have committed Perjury in the First Degree, in violation of New York Penal Law § 210.15 by sworn execution of the Application for Sewage Disposal Facilities and Water Supply Systems for Other Than Single Family Residences on or about December 12, 2019, while knowing such application contained false statements and material misrepresentations, in order to fraudulently secure approval of second variance from the Suffolk County Department of Health Services;

j) Declare Namresi Construction and Development Corp. to have violated and to be in violation of the New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for the illegal discharges occurring at and from 37 Main Street in Cold Spring Harbor, New York 11724;

k) Issue a declaratory judgment against the State of New York, finding it to have acted in violation of the New York State Administrative Procedure Act, NY State APA § 102, *et. seq.*, he New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; the Freshwater Wetlands Act, NY Env. Cons. L. § 24-0101, *et. seq.*, and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for the New York Department of Environmental Conservation's failure to properly investigate, enforce, and assert appropriate penalties for the ongoing illegal discharges and sanitary system overflows of 37 Main Street and 53-55 Main Street in Cold

Spring Harbor, New York 11724;

l) Issue an order against the State of New York requiring enforcement of its duties by and through the New York Department of Environmental Conservation under Article 78 of the New York CPLR, in connection with the premises located at 37 Main Street and 53-55 Main Street in Cold Spring Harbor, New York 11724;

m) Issue a declaratory judgment against Suffolk County, New York, finding it to have acted in violation of the New York State Administrative Procedure Act, NY State APA § 102, *et. seq.*, he New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; the Freshwater Wetlands Act, NY Env. Cons. L. § 24-0101, *et. seq.*, and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for its failure to properly investigate, enforce, and assert appropriate penalties for the ongoing illegal discharges and sanitary system overflows of Namresi Construction and Sandbar restaurant;

n) Issue an order against Suffolk County requiring enforcement of its duties by and through the Suffolk County Department of Health Services under Article 78 of the New York CPLR, in connection with the premises located at 37 Main Street and 53-55 Main Street in Cold Spring Harbor, New York 11724;

o) Issue a declaratory judgment against Walter Dawydiak, finding him to have acted in violation of his ministerial duties under the New York State Administrative Procedure Act, NY State APA § 102, *et. seq.*, and his actions in violation of New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; the Freshwater Wetlands Act, NY Env. Cons. L. § 24-0101, *et. seq.*, and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for its failure to properly investigate, enforce, and assert appropriate penalties for the ongoing illegal discharges and sanitary system overflows of Namresi Construction and Sandbar restaurant;

p) Issue an order against Walter Dawydiak requiring enforcement of his ministerial duties as Director of Environmental Quality for the Suffolk County Department of Health Services 8under Article 78 of the New York CPLR, in connection with the premises located at 37 Main Street and 53-55 Main Street in Cold Spring Harbor, New York 11724;

q) Issue a declaratory judgment declaring that the U.S. Environmental Protection Agency violated the Clean Water Act and the Administrative Procedures Act by failing to perform their nondiscretionary duties under the CWA and to implement and administer the Act in a manner that complies with the Administrative Procedure Act;

r) Immediately enjoin Defendants from operating, and allowing the operation of, the failing and non-compliant sanitary systems at 37 Main Street and 53-55 Main Street in Cold Spring Harbor, New York 11724, and from further discharging sanitary sewage into the freshwater wetlands and navigable waters and tributary streams of Cold Spring Harbor and Long Island Sound;

s) Enjoin Defendants Oyster Bay Management, Sandbar, and the Lessing's Defendants from extending the Sandbar restaurant's sanitary system onto neighboring properties in violation of County Codes;

t) Assess civil penalties against Defendants Sandbar, Lessing's, and Namresi of up to o $37,500 per day per violation for violations occurring on or before June 20, 2018, and $55,800 per day per violation for violations occurring after June 20, 2018. 40 C.F.R. § 19.4 (effective Jan. 13, 2020);

u) Allow Plaintiffs to recover all economic and non-economic damages available to them resulting from the illegal sewage discharges and overflows of Namresi;

v) Allow Plaintiffs to recover all available economic and non-economic damages to

which they are entitled from each Defendant as a result of the illegal sewage discharges and sewage overflows of the Sandbar;

w) Immediately enjoin the Defendants from proceeding with the second variance sought in the falsely sworn Application for Sewage Disposal Facilities and Water Supply Systems for Other Than Single Family Residences submitted by Mark Lessing on or about December 12, 2019, which will further violate the Suffolk County and SCDHS and New York State codes;

x) Ordering the Defendant's to remediate the damages sustained by the DEC protected wetlands on Plaintiff's properties specifically those wetlands located at 36 Spring Street (including those wetlands which abut Shore Road and Spring Street) and east along Spring Street.

y) Allow Plaintiffs to recover the reasonable fees, costs, and disbursements of this action, including attorney's fees with this litigation; and

z) Grant such further and additional relief as the Court may deem just and proper.

### JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction of this action pursuant to 33 U.S.C. § 1365(a)(1) and (2); 28 U.S.C. § 1346(a)(2); and 28 U.S.C. §§ 1331 and 2201 (for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1) because the Environmental Protection Agency (hereinafter "EPA") Region 2 Main Regional Office is located in New York; all other named Defendants are located in the State of New York; and the events or omissions giving rise to the claims brought by Plaintiffs occurred within this judicial district, specifically, within Suffolk County, New York.

3.     Plaintiffs are "citizens" under the Clean Water Act (hereinafter "CWA") citizen suit provision and have authority to bring this action, pursuant to 33 U.S.C. §§ 1365(g).  Further, Plaintiffs are "persons" under the Administrative Procedure Act (hereinafter "APA") and have authority to bring this lawsuit under the provisions of 5 U.S.C. §§551(2) and 702.

4.     On August 5, 2022, Plaintiffs provided written notice of the ongoing and continuous CWA violations complained of via Certified U.S. Mail to the United States through Lisa F. Garcia, Regional Administrator of the EPA, Region 2, as required by the CWA, 33 U.S.C. § 1365(b), of its violations of the CWA and Plaintiffs' intention to file suit.

5.     On March 9, 2021 and additionally on August 30, 2022, Plaintiffs provided written notice of the ongoing and continuous violations of Suffolk County and the Suffolk County Department of Health Services (hereinafter "SCDHS") codes and standards along with the violations of the New York State and County Sanitary Codes via Certified U.S. Mail to New York Secretary of State, Servicing Agent, the County of Suffolk; Office of the Suffolk County Attorney; Greg H. Pigott, MD, MPH, Commissioner of the Suffolk County Department of Health Services; and James L. Tomarken, MD, MSW, MPH, MBA, FRCPC, FACTP, Commissioner, Suffolk County Department of Health Services of its violations of the CWA, the New York State Sanitary Code, and the Suffolk County Sanitary Code pursuant to 33 U.S.C. § 1365(b)(1)(A). The August 30, 2022 notice was also sent via email transmission to Walter Dawydiak of the SCDHS along with other members of the SCDHS; Lisa F. Garcia, Regional Director of the EPA; Joseph Towana of the EPA; Erica Goldaber of the EPA; and Central Dispatch of the New York State Department of Environmental Conservation (hereinafter "DEC") on said date.

6.     Defendants remain in violation of the CWA, Fresh Water Act, APA, New York

State Sanitary Code, §760-1351, and Suffolk County Sanitary Codes §760-502 and §760-504, in connection with the premises located at 37 Main Street and 53-55 Main Street in Cold Spring Harbor, New York 11724, and Plaintiffs are informed and believe, and thereon allege, that neither the United States, including but not limited to the EPA, nor the New York DEC, Suffolk County / SCDHS have responded to Plaintiffs' notices, acted to redress the violations at issue, nor have they commenced or diligently prosecuted a Court action to redress the violations alleged in the Notices or this Complaint. More than the requisite sixty (60) days have passed since the two (2) Notice Letters were issued to the State and Federal Agencies and this action is not barred by any prior administrative penalty matter issued under Section 309(g) of the Clean Water Act, 33 U.S.C. § 1319(g). Accordingly, the requirements of 33 U.S.C. § 1365(b)(1)(A), NY Gen. Mun. Law 50(e), and NY County Law 52 have been satisfied.

## PARTIES

1.      At all times relevant, Plaintiffs were and are residents of the State of New York, and the owners of certain real property located within the designated R-80 residential zone on Spring Street in Cold Spring Harbor.  As such Plaintiffs are affected by the health of the environment and waters of Cold Spring Harbor.

2.      Upon information and belief, and all times relevant, Defendant Oyster Bay Management Co, LLC was and is a domestic limited liability company organized and existing by virtue of the laws of the State of New York. Oyster Bay Management Co, LLC is the fee simple owner of the property located at 53-55 Main Street, Cold Spring Harbor, New York; and the active owner and operator of the Sandbar restaurant located on said property. Defendant Oyster Bay Management Co., LLC may be served with process through its Registered Agent, Egan & Golden, LLP, at 95 South Ocean Avenue, Patchogue, New York 11772.

3.     Upon information and belief, and all times relevant, Defendant Lessing's Food Service Management Corp., doing business as the Sandbar, was and is a limited liability company organized and authorized to conduct business in the State of New York. Lessing's Food Service Management Corp. owns, operates, or manages the Sandbar restaurant located at 53-55 Main Street, Cold Spring Harbor, New York. Defendant Lessing's Food Service Management Corp. may be served with process through its principal, Michael Lessing, at 3500 Sunrise Highway, Building 100, Suite 100, Great River, New York 11739.

4.     Upon information and belief, and all times relevant, Defendant Lessing's Franchise Group, Inc., doing business as the Sandbar, was and is a limited liability company organized and authorized to conduct business in the State of New York. Lessing's Franchise Group, Inc. owns, operates, or manages the Sandbar restaurant located at 53-55 Main Street, Cold Spring Harbor, New York. Defendant Lessing's Food Service Management Corp. may be served with process at 3500 Sunrise Highway, Building 100, Suite 100, Great River, New York 11739.

5.     Upon information and belief, and all times relevant, Defendant Lessing's NY Corp., doing business as the Sandbar, was and is a limited liability company organized and authorized to conduct business in the State of New York. Lessing's NY Corp. owns, operates, or manages the Sandbar restaurant located at 53-55 Main Street, Cold Spring Harbor, New York. Defendant Lessing's NY Corp. may be served with process at 3500 Sunrise Highway, Building 100, Suite 100, Great River, New York 11739.

6.     Upon information and belief, and all times relevant, Defendant Lessing's Restaurant Services, Inc., doing business as the Sandbar, was and is a limited liability company organized and authorized to conduct business in the State of New York. Lessing's Restaurant

Services, Inc. owns, operates, or manages the Sandbar restaurant located at 53-55 Main Street, Cold Spring Harbor, New York. Defendant Lessing's Restaurant Services, Inc. may be served with process through its principal, Michael Lessing, at 3500 Sunrise Highway, Building 100, Suite 100, Great River, New York 11739.

7.     Upon information and belief, and all times relevant, Defendant Lessing's, Inc., doing business as the Sandbar, was and is a limited liability company organized and authorized to conduct business in the State of New York. Lessing's, Inc. owns, operates, or manages the Sandbar restaurant located at 53-55 Main Street, Cold Spring Harbor, New York. Defendant Lessing's, Inc. may be served with process through its principal, Michael Lessing, at 3500 Sunrise Highway, Building 100, Suite 100, Great River, New York 11739.

8.     Upon information and belief, and all times relevant, Defendant Namresi Construction & Development Corp. was and is a domestic business corporation organized and authorized to conduct business in the State of New York at 37 Main Street, Cold Spring Harbor, New York 11724.  Defendant Namresi Construction & Development Corp. may be served with process through its principal Edith Iserman at 13 Kew Court, Northport, New York 11768.

9.     Upon information and belief, and all times relevant, Mark Lessing, acting individually and as a principal of Lessing's, Inc., has managed and operated the Sandbar Restaurant located at 53-55 Main Street, Cold Spring Harbor, New York by and through Oyster Bay Management Co., LLC and the "Lessing's Defendants." Mr. Lessing may be served with process in this action at 3500 Sunrise Highway, Building 100, Suite 100, Great River, New York 11739 or, alternatively, at 114 Colonial Road, Great Neck New York 11021.

10.     Upon information and belief, and all times relevant, Walter Dawydiak, has acted individually and within the course of scope of his employment as Director of Environmental

Quality for the Suffolk County Department of Health Services. Mr. Dawydiak may be served with process in this action at 360 Yaphank Avenue, Suite 1 C, Yaphank, New York 11980 or, alternatively, at 27 Rogers Lands, Remsenburg-Speonk, New York 11960.

11. Suffolk County, New York is a municipality incorporated under the laws of the State of New York responsible for the establishment, enforcement, and promulgation of the County Sanitary Code through its Department of Health Services, and a person within the meaning of the Clean Water Act, 33 U.S.C. § 1262(5) and § 1362(5). Suffolk County, New York has the authority and ability to remedy the harms inflicted by Defendants' acts and omissions. Suffolk County, New York, may be served with process in this action through the New York Secretary of State

12. The State of New York formed the Department of Environmental Conservation (the New York "DEC"), which is responsible for the establishment, enforcement, and promulgation of the New York Environmental Conservation Law and the Freshwater Wetlands Act, NY Env. Cons. L. § 24-0101, *et. seq.* Defendant New York, by and through its Department of Environmental Conservation, has the authority and ability to remedy the harms inflicted by Defendants' acts and omissions. The State of New York may be served with process in this action through the Office of the New York Attorney General, Suffolk Regional Office, 300 Motor Parkway, Suite 230, Hauppauge, New York 11788.

13. Defendant United States Environmental Protection Agency is an agency of the Federal Government, which has the primary statutory responsibility under the Act to protect the waters of the United States from pollution. Under the Clean Water Act ("the Act" or "CWA"), the United States Environmental Protection Agency (the "EPA") and New York State Department of Environmental Conservation (the "DEC") share responsibility for adopting and

enforcing water quality standards sufficient to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters" which standards are central to the CWA's regulatory scheme. 33 U.S.C. § 1251(a), (a)(2).  The EPA-DEC Enforcement Agreement by and between the EPA and the New York Department of Environmental Conservation executed April 4, 1984, establishing "… federal environmental programs authorized/delegated or to be authorized/delegated under the Clean Water Act …" individually and through the New York DEC, acting as a subsidiary of the EPA.  Defendants EPA and the New York DEC have the authority and ability to remedy the harms inflicted by Defendants' acts and omissions.

14.     Defendant Lisa F. Garcia is the Acting Regional Administrator of the Environmental Protection Agency, Region 2. Together with the Administrator of the United States Environmental Protection Agency, Ms. Garcia is charged with the administration and enforcement of the Clean Water Act in the State of New York. Defendant EPA, by and through its Regional Administrator, has the authority and ability to remedy the harms inflicted by Defendants' acts and omissions.

15.     Cold Spring Harbor and the DEC protected wetlands that flow into Cold Spring Harbor, and subsequently, the Long Island Sound, are the local waterways that receive the illegal discharges and the environmental impacts from those discharges arising from the Sandbar Restaurant located at 53-55 Main Street, Cold Spring Harbor, New York 11724 and Namresi Construction & Development Corp., located at 37 Main Street, Cold Spring Harbor, New York 11724 in violation of the Clean Water Act, the New York State Sanitary Code, and Suffolk County Sanitary Codes.

## INTRODUCTION & BACKGROUND

1.      Cold Spring Harbor is a hamlet in the Town of Huntington, Suffolk County, on the North shore of Long Island in New York, listed on the National Register of Historic Places. Water is the defining characteristic of the historical hamlet as Cold Spring Harbor was named after the abundance of naturally cold freshwater springs that flow through it into the harbor and once provided drinking water through strategically placed public taps. Cold Spring Harbor covers approximately two thousand three hundred sixty-eight (2,368) acres, of which one hundred twenty-eight (128) acres are water, such as the inner harbor that helps form the hamlet's Western border. Additionally, Cold Spring Harbor is designated by the New York Department of State Coastal Zone Management as a "Significant Fish and Wildlife Habitat."

2.      Plaintiffs are residents of Cold Spring Harbor, residing on Spring Street, a quiet tree-lined street of family homes in the historic district fronted only by residential structures and abutted by New York State Department of Environmental Conservation designated Freshwater Wetland Complex H-3. The rear of the Sandbar and Namresi properties border Spring Street in the residential zone and the historic residences and protected DEC wetlands thereon, the protected DEC wetlands are within approximately one hundred (100) feet of the failing leeching fields of the Sandbar restaurant, the Sandbar property line is within approximately fifty (50) feet of the DEC protected wetlands. As mentioned previously, the protected wetlands flow into Cold Spring Harbor and, subsequently, the Long Island Sound.

### A. Sandbar Restaurant

3.      In or about August of 2013, the Lessing's Defendants received a special use permit and site plan approval from the Town of Huntington's Zoning and Planning Boards to operate a restaurant known as the Sandbar, at 53-55 Main Street in Cold Spring Harbor.

4.     On May 19, 2014, Suffolk County, through the Suffolk County Department of Health Services, issued a variance to the Sandbar permitting it to operate despite knowing that the proposed sanitary system on the property was undersized for the property size and intended use, and did not comply with the standards of the New York State Sanitary Code or the Suffolk County Sanitary Code.

5.     The Declaration of Covenants and Restrictions, personally acknowledged by Stephen Lessing, a principal owner and the managing member of Oyster Bay Management Co., LLC, on June 30, 2014 confirm that "the system will not meet the minimum prescribed separation distances between property line and a retaining wall," and that "the system will not have adequate expansion area for future expansion".

6.     As a condition of approval for the variance, notice was given in the Declaration of Covenants and Restrictions that, "the sewage disposal system does not comply with standards and that any repair, replacement and/or expansion of said system may require extensive reconstruction expense beyond that normally expected."

7.     As a result of the Sandbar's variance and non-compliant sanitary system, which is operating in violation of the applicable State and County codes, the failing sanitary system overflows and leaks, with sewage observed seeping from the Sandbar driveway onto Spring Street, into the DEC protected wetlands, Cold Spring Harbor and the Long Island Sound. Inspections conducted by the Suffolk County Department of Health Services as early as June 20, 2018 have noted the following:

> "Sewage/gray water was noted to be seeping/bubbling lightly from the driveway behind the [Sandbar Restaurant] several feet north of a cesspool cover, and flowing down the driveway into the street below."

"Evidence of a recent sewage overflow noted int hat a stream of sewage was noted starting from rear of Sand Bar [sic] going into Spring St. towards Shore Rd."

"Evidence of a sewage overflow noted on the lower portion of the hill."

"Sewage observed to be actively overflowing in driveway. Sewage is slowing seeping up through gravel driveway at a downward sloping section of driveway leading north to Spring Street. Sewage not observed to be reaching the roadway and is not pooling into appreciable puddles"

8.      On December 19, 2018, the Sandbar was fined by the Suffolk County District Court for its violations, for which it was required to pay fines totaling $1,500 and a $75.00 fee.

9.      In the face of the fines levied against it, the Sandbar's failing sanitary system remained operating in violation of the State and County Codes, and a hearing was held January 17, 2019, as the Sandbar's failing sanitary system continued to overflow and leak down its driveway onto Spring Street, into the DEC protected wetlands, Cold Spring Harbor and the Long Island Sound in violation of the CWA.

10.     Despite the hearing (which was closed to the public) and concerns expressed by the Spring Street Residents, the nuisances, interferences, and pollutions discharged from the Sandbar's failed sanitary system continue unabated to date.

11.     On August 9, 2022, the EPA was notified by a formal electronic complaint filing that the Sandbar restaurant's failing sanitary system was observed to be overflowing from the same locations that the DEC and SCDHS have previously confirmed were overflowing and contained sewage.  The DEC was also contacted on August 9, 2022 and a Complaint was filed, DEC spill #2204065.

12.     On August 17, 2022 an additional formal electronic complaint was filed with the

EPA, specifically the Sandbar's failing sanitary system was observed overflowing from the driveway into Spring Street.  While the Sandbar added additional gravel to the driveway in July 2022, per the SCDHS direction, the leaking sewage was observed to be overflowing up through approximately eight (8) inches of compacted gravel and down the driveway into Spring Street, which leads to the DEC protected wetlands, Cold Spring Harbor and the Long Island Sound.

13.     Due to the Sandbar's failing sanitary system, which has been documented as failing for years and continues to be utilized to date, which overflows into Spring Street, into the DEC protected wetlands, Cold Spring Harbor and the Long Island Sound, the Plaintiffs and the DEC protected wetlands have been and continue to be exposed to various health and environmental hazards which have impeded the safety and quality of life of the Residents of Spring Street.  The failing sanitary system has further exposed and continues to expose the underground natural springs and waters of Cold Spring Harbor to excessive contaminants far above the County and State sanitary codes.

14.     Additionally, as a result of the failing Sandbar restaurant sanitary system, excessive commercial traffic and hazards arise from the Sandbar's inadequate remedies to conceal or otherwise control its failing sanitary system  which is pumped multiple times per week [often four (4) to seven (7) times per week] which has been occurring for years and continues to date.  The sanitary pump trucks access the Sandbar from residential Spring Street in violation of the "One Way" and "Do Not Enter" highway signs posted at the entrance of the One-Way driveway or they idle on Spring Street in the residential neighborhood while pumping.

15.     In addition to the significant noise and noxious smells emitted by the pump trucks, toxic waste collection tubes extending from the Sandbar to its pump trucks have been observed leaking sewage onto the ground which runs down Spring Street, into the DEC

protected wetlands and into Long Island Sound in violation of the CWA.  Further, as a result, rain and storm water runoff contaminated by the leaked sewage runs downhill from the Sandbar driveway onto Spring Street, into the DEC protected wetlands and into the Long Island Sound.

16.     In direct disregard of the hearing and the complaints made against the Sandbar restaurant, the sewage overflows occurring from the Sandbar's failing sanitary system continue unabated and unaddressed by Suffolk County, the Suffolk County Department of Health Services, or the New York Department of Environmental Conservation.

17.     The Suffolk County Department of Health Services Standards for Approval of Plans and Construction for Sewage Disposal Systems for Other Than Single-Family Residents dated December 29, 2017 (the "SCDHS Standards" co-authored by Walter Dawydiak) states that "the purpose of these standards is to provide a means for achieving protection of the groundwater from excessive contaminant loading and to assure a safe, sanitary means of disposing of waste water."

18.     The SCDHS Standards further acknowledge that diseases are transmitted by "water, food, insects, pets, and toys contaminated by human waste."

19.     On March 2, 2020, Plaintiff Coden expressed concerns about the impacts of the continued sewage overflows on the local groundwater and the protected DEC freshwater wetlands located approximately within one-hundred (100) feet of the Sandbar sanitary system directly to Walter Dawydiak of the SCDHS.

20.     Mr. Walter Dawydiak of the SCDHS, who co-authored The Suffolk County Department of Health Services Standards for Approval of Plans and Construction for Sewage Disposal Systems for Other Than Single-Family Residents dated December 29, 2017, has engaged with Plaintiff multiple times regarding the Sandbar's failing sanitary system.  Ironically,

the Introduction co-authored by Mr. Dawydiak addresses the very concerns Plaintiffs have brought to the attention of Mr. Dawydiak and the SCDHS specifically, the Introduction found on page 4 states "The purpose of these standards is to provide a means for achieving protection of the groundwater from excessive contaminant loading and to assure a safe, sanitary means of disposing of waste water." Said Introduction continues stating that diseases are transmitted by "water, food, insects, pets, and toys contaminated by human waste" - the very same issues the Spring Street Residents are concerned with due to the faulty sanitary system at the Sandbar which have been observed and documented since 2018 by both the SCDHS and DEC and which continue to date.

21.     The SCDHS and Walter Dawydiak personally, were advised of the Sandbar's failing sanitary system and continued sewage overflow observed emanating from the Sandbar sanitary system.  Moreover, failing to address the failing sanitary system, the SCDHS advised the Sandbar to cover the overflow with multiple layers of gravel, which were compacted with commercial machinery and are in excess of approximately right (8) inches, and to pump the failing sanitary system which has been occurring for years a minimum of four (4) times per week and up seven (7) times per week. Per SCDHS standards and codes, the Sandbar system is "failing" and yet the Sandbar restaurant continues to remain in operation.

22.     On March 9, 2021, the Suffolk County Department of Health Services advised it dispatched staff to investigate sewage overflows emanating from the Sandbar's driveway on March 5, 2021 and March 8, 2021, advising "frozen patches of water were observed seeping from the gravel driveway," and concluding "wastewater influence on groundwater appears likely at one of these frozen patches, located halfway up the driveway."

23.     Regardless of tests revealing continued overflows and leaks, as well as

groundwater contamination by the sewage overflows, the SCDHS has required only that the Sandbar re-grade its driveway, covering it with inches of gravel to (unsuccessfully) conceal the surface level overflow: wholly failing to address the source of the failure and the subsurface contamination of the groundwater, and failing to require the Sandbar to remediate the contamination that has accumulated over the past several years in the Spring Street residential area; the DEC protected wetlands; Cold Spring Harbor and the Long Island Sound.

24.     Further, in addition to the sewage overflow observed and documented flowing from the Sandbar restaurant for years, the SCDHS was made aware on May 22, 2020 by the Sandbar's retained expert at H2M by Christopher Weiss, PE to Mr. Knepper (SCDHS) via written communication, of the direct contamination of the groundwater by the Sandbar's existing failing sanitary system. "The existing wicks under the original site will continue to channel upwelling groundwater from the lower aquifer towards the surface in the area of the old leeching field. The upwelling water, as soon as it can, will start to flow by gravity towards the aptly named Spring Street, in the dominant direction of groundwater flow". Sandbar's own expert, notifying the SCDHS, acknowledges the failing sanitary system and the contamination of the groundwater below the leeching fields of the Sandbar and the contamination of the Spring Street residential area. The natural springs founds on and below Spring Street flow into the DEC protected wetlands, Cold Spring Harbor and the Long Island Sound in violation of the CWA. To date, the failing sanitary system continues to contaminate both above and below ground water which is known by the Sandbar restaurant per their hired expert and communicated directly to the SCDHS, DEC and EPA.

25.     The SCDHS, DEC and EPA have failed to escalate or pursue any further remedy to address the illegal failing sanitary system discharges of the Sandbar into the protected DEC

wetlands or underground natural springs that feed Cold Spring Harbor and Long Island Sound in violation of the CWA and Freshwater Wetlands Act.

### A. Namresi Construction & Development Corp.

26.     The property located at 37 Main Street is a former residential structure that presently operates as a commercial operation with increased space and use.   The now commercial building is operating with the original residential antiquated sanitary system which is contrary to the Suffolk County and New York State codes.  The commercial building is also operating without a permit from the County.

27.     Per the August 30, 2022 Notice and March 9, 2021 Notice sent via Certified Mail / Return Receipt sent to Suffolk County and the SCDHS, "37 Main Street does not have a commercial sanitary system that is up to code".

28.     The existing Namresi sanitary system on the property is a residential system that has not been updated to conform with the commercial usage of the building as required by the applicable codes.

29.     In order to be brought into compliance with the applicable codes, the approximately three thousand (3,000) square foot commercial building occupying the property located at 37 Main Street will require all of its .37 acres to accommodate a conforming sanitary system in compliance with the Suffolk County and New York standards and codes for commercial buildings, which is significant as the Namresi property and more importantly, its sanitary system, is currently operating in direct violation of Section III, Prohibition of Installation/Use of Sewage Disposal Systems of the Suffolk County Department of Health Services Standards for the Approval of Plans and Construction for Sewage Disposal Systems for Other than Single-Family Residences.

30.     As a result of its antiquated residential construction, upon information and belief, Namresi's sanitary system is failing and contaminating the ground water which leads into the springs of Cold Spring Harbor, the DEC protected wetlands and the Long Island Sound in violation of the Clean Water Act.

31.     Despite complaints asserted by the Spring Street Residents, the SCDHS has failed to conduct any measurable investigation in to the present status of the Namresi residential sanitary system for the commercial building or the illegal underground and storm water discharges into the protected wetlands or underground natural springs that feed Cold Spring Harbor and the Long Island Sound.

**C. Extension of Sandbar's Sanitary System**

32.     On or about December 12, 2019, the Sandbar restaurant submitted an application to the SCDHS seeking a second variance to extend its failing commercial sanitary system onto the property owned by Namresi at 37 Main Street.

33.     The sworn application submitted by Mark Lessing, under penalty of perjury, to the SCDHS on or about December 12, 2019, as a principal of Sandbar restaurant knowingly misrepresents that:

a. 37 Main Street and 53-55 Main Street are owned by a single entity which owns the Sandbar restaurant;

b. The total "Gross Floor Area of [the] Building(s)" is 7,049 square feet;

c. The Gallons Per Day of Sewage Discharge is reflected as 2,550 gpd for both properties - Sandbar and Namresi; and

d. The "Total Area of Parcel" is 0.61 acres.

34.     Firstly, the properties at issue are not owned by a single entity as current tax and

property records show Namresi Construction, Inc. owns the property located at 37 Main Street, and Oyster Bay Management, Inc. own the property located at 53-55 Main Street (Sandbar). Accordingly, Mark Lessing, the Sandbar, and Lessing's Defendants do not own, operate, or have related authority to seek any material action involving the property located at 37 Main Street.

35.     The Suffolk County Sanitary Code, authored by Walter Dawydiak, specifically prohibits the expansion of sanitary systems onto neighboring properties, to wit, the Site Condition Requirements of Section IX require that, "a) sewage disposal systems be located on land owned by the application and b) on the same parcel as the building."

36.     The gross floor area of the Sandbar alone is approximately seven thousand forty-nine (7,049) square feet and the commercially operated building located on the property of 37 Main Street, is approximately three thousand (3,000) square feet for a total of approximately ten thousand forty-nine (10,049) square feet [almost fifty percent (50%) more commercial square feet than represented under oath in the application]. The correct total "Gross Floor Area of Buildings" on the two (2) properties in question exceeds no less than ten thousand (10,000) square feet.

37.     The "Gallons Per Day of Sewage Discharge" represented by Mark Lessing as two thousand five hundred fifty (2,550) gpd, again, does not account for any of the gallons per day sewage discharge from the commercially-operated building located on the property of 37 Main Street. The two thousand five hundred fifty (2,550) gpd reflects the Sandbar restaurant alone.

38.     Further, the reported "Total Area of Parcel" of 0.61 acres upon which the application was brought is inaccurate as it does not account for a single parcel, but for the combined area of both parcels of land located at 37 Main Street and 53-55 Main Street which are

owned and operated by two (2) separate entities.

39.     The proposal does not indicate correctly that there will be a change in existing use of a building.  Records in the possession, custody, and control of Suffolk County and the SCDHS evidence that 37 Main Street's sanitary system is designed to provide for residential sewer and waste management, and that it was never upgraded to commercial as required by and in accord with the County and New York State codes.

40.     The misrepresentations, sworn to and submitted under penalty of perjury by Mark Lessing mislead and misinform the SCDHS to effectuate a second additional variance for the sole benefit of the Sandbar and Namresi without consideration of the environmental impacts to the designated DEC protected wetlands, the underground natural springs, or the waters into which they feed specifically Cold Spring Harbor and the Long Island Sound.

41.     As referenced above, there is no evidence that the approximately three thousand (3,000) square foot commercial building occupying the property located at 37 Main Street has a conforming sanitary system.  The building, once required to be brought up to County and New York codes, will require all of its .37 acres to accommodate such sanitary system in compliance with the Suffolk County and New York State standards and codes for commercial buildings. There is not sufficient room to accommodate any of the Sandbar's sanitary needs.

42.     Due to the limited property available to update the Namresi sanitary system, which would require the entirety of its 0.37 acre property, there exists no remaining property available to accommodate the proposed updated sanitary system sought by the Sandbar restaurant. Further, the Sandbar's application for the second variance to the SCDHS does not indicate that the building located at 37 Main Street will be demolished to accommodate the sanitary needs of the Sandbar.

43.     The 2019 application submitted by the Sandbar to the SCDHS on or about December 12, 2019, which was subsequently granted, is misleading and misrepresents the facts and intentions of Defendants Namresi and the Sandbar and results in further environmental harm to Plaintiffs, Cold Spring Harbor and the Long Island Sound.

**D. Failed Enforcement of the Clean Water Act, New York State Sanitary Code, §760-1351, and Suffolk County Sanitary Codes §760-502 and §760-504**

44.     Plaintiffs and the Spring Street Residents have repeatedly expressed their concerns in writing and otherwise to the SCDHS, DEC, and EPA regarding the ongoing and long-term impacts and damages to Plaintiffs' properties, the DEC protected freshwater wetlands located within approximately one hundred (100) feet of the Sandbar's failing sanitary system, and the illegal discharges contaminating the ground water feeding Cold Spring Harbor and Long Island Sound from the unabated failed sanitary systems of the premises located at 37 Main Street (Namresi) and 53-55 Main Street (Sandbar) in Cold Spring Harbor, New York 11724.

45.     Despite the ongoing violations and complaints brought by the Plaintiffs and the Spring Street Residents, the SCDHS, DEC and EPA have failed to enforce the New York and Suffolk County Sanitary Codes, permitting the known failing sanitary systems of the premises located at 53-55 Main Street (Sandbar) and 37 Main Street (Namresi) in Cold Spring Harbor, New York 11724 to negatively impact Plaintiffs' properties, contaminate the DEC protected freshwater wetlands, contaminate the Cold Spring Harbor springs and underground water system (as acknowledged by Sandbar's expert Christopher Weiss of H2M) destroying the ecosystem and wildlife for which Cold Spring Harbor is known in violation of the CWA.

46.     As a result of the U.S. Environmental Protection Agency, Suffolk County, SCDHS and DEC's failure to comply with the CWA and APA, Namresi and Sandbar and the

Lessing's Defendants have been permitted to continue illegal discharges of pathogens and contaminating pollutants emanating from the failing sanitary system of the premises located at 53-55 Main Street.  Further, Namresi located at 37 Main Street has been operating without a conforming commercial sanitary system in violation of the County and New York State codes.

Upon information and belief, both properties have been contaminating DEC protected freshwater wetlands, natural springs, Cold Spring Harbor and the Long Island Sound for years in violation of the CWA resulting in unabated harm to the natural environment, ecosystem, and waters.

47.     Plaintiffs and their properties have been injured by the U.S. EPA, DEC, SCDHS, Suffolk County, and New York's ongoing failures to comply with the CWA and enforce the New York State Sanitary Sewer Code and the Suffolk County Sanitary Sewer Code as it pertains to the failing sanitary systems of the premises located at 37 Main Street and 53-55 Main Street in Cold Spring Harbor, New York 11724, resulting in ongoing illegal discharges of pathogens and contaminants of the natural underground water, DEC protected freshwater wetlands, waters of Cold Spring Harbor, the Long Island Sound, as well as the economic and property interests of Plaintiffs as a result of such damage.

## STATUTORY AND REGULATORY BACKGROUND
### The Clean Water Act

48.     The purpose of the CWA is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). This purpose includes the elimination of "the discharge of pollutants into the navigable waters" and attainment of "water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water." 33 U.S.C. §§ 1251(a)(1), (2).

49.     The CWA defines "navigable waters" as "waters of the United States." 33 U.S.C. § 1362(7).

50.     Cold Spring Harbor and Long Island Sound and their tributary streams are "waters of the United States" as defined in EPA's implementing regulations. 40 C.F.R. §§ 122.2, 120.2. The CWA requires all states to adopt water quality standards for their water bodies, subject to EPA review. 33 U.S.C. § 1313(c)(1).

51.     State water quality standards must: (1) designate uses of the waterway (e.g., protection of aquatic life and recreational uses); (2) set water quality criteria, expressed as either narrative or numeric standards; and (3) contain an anti-degradation policy that protects existing uses. *See* 33 U.S.C. § 1313; 40 C.F.R. §§ 131.10–131.12

52.     A water quality standard must take into account the water's "use and value for public water supplies, propagation of fish and wildlife, recreational purposes, and agricultural, industrial, and other purposes . . . ." 33 U.S.C. § 1313(c)(2)(A).

53.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of a pollutant by any person to waters of the United States, except, inter alia, in compliance with a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

54.     Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines "pollutant" to include, inter alia, sewage, sewage sludge, biological material and industrial, municipal and agricultural waste.

55.     Any unauthorized discharge of a pollutant is a violation of the Clean Water Act under Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a)."

56.     Section 505(a) of the Clean Water Act provides for citizen enforcement actions

against any "person," for violations of (1) any effluent standard or limitation or (2) an order issued by the Administrator or a State with respect to such a standard or limitation. See 33 U.S.C. §§ 1365(a), 1365(f), 1362(5).

57.     Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), authorizes an action for injunctive relief. Each separate violation of the Clean Water Act subjects the violator to an assessment of civil penalties pursuant to the Clean Water Act sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d), 1365(a), occurring from at least July 28, 2015 to the present. Civil penalties for violations of the Clean Water Act subject the violator to a penalty of up to $55,800 per day per violation for violations occurring after November 2, 2015 and $37,500 per day per violation for violations occurring before November 2, 2015. 40 C.F.R. § 19.4 (effective Jan. 13, 2020).

58.     Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), permits the prevailing or substantially prevailing parties to recover litigation costs, including attorneys' and experts' fees.

## STATUTORY AND REGULATORY BACKGROUND
New York Environmental Conservation Law, The Freshwater Wetlands Act

59.     New York State's freshwater wetlands are protected under Article 24 of the Environmental Conservation Law, known as the "Freshwater Wetlands Act" (hereinafter "FWA").

60.     The purpose of the FWA is to "preserve, protect and conserve freshwater wetlands and the benefits derived therefrom, to prevent the despoliation and destruction of freshwater wetlands, and to regulate use and development of such wetlands to secure the natural benefits of freshwater wetlands, consistent with the general welfare and beneficial economic, social and agricultural development of the state." New York Environmental Conservation Law §

24-0103.

61.     Cold Spring Harbor is abutted by New York State Department of Environmental Conservation designated Freshwater Wetland Complex H-3.

62.     The boundaries of the H-3 designated Freshwater Wetland Complex abutting Spring Street in Cold Spring Harbor are within approximately one hundred (100) feet of the failing leeching fields of the Sandbar restaurant, the Sandbar property line is within approximately fifty (50) feet of the DEC protected wetlands.

63.     As provided in the New York State Freshwater Wetlands Delineation Manual, the New York State regulated wetlands area includes the wetlands themselves, as well as a protective buffer or "adjacent area" extending 100 feet landward of the wetland boundary.

64.     The FWA accords with the CWA and New York Environmental Conservation Laws as to the protection of navigable waters, further established under NY Env. Cons. L. § 15-0505, *et seq*.

65.     Moreover, the protected wetlands flow into Cold Spring Harbor and, subsequently, the Long Island Sound, which are further subject to concurrent protection under the Clean Water Act, 33 U.S.C. §§ 1344.

66.     The FWA is subject to enforcement by the New York Department of Environmental Conservation through its policies to provide "protection of subsurface water supplies, provid[e] fish and wildlife habitat, flood and storm control, pollution treatment, and sedimentation control."

67.     The Environmental Conservation Law also authorizes enforcement of the FWA through both civil and criminal sanctions, including seeking restoration of wetland benefits subjected to illegal activity and punishment of violators. NY Env. Cons. L. § 15-0505 and § 71-

2303, *et seq.*

68.     The statute specifically authorizes each day of a continuing offense to be treated as a separate and distinct offense. NY Env. Cons. L. § 71-2303 (2).

69.     Specifically, Criminal penalties for violations of Article 24 include a first offense punishable as a violation by a fine of between $500 and $1,000 and up to fifteen (15) days imprisonment; second and subsequent offenses constitute misdemeanors punishable by a fine of between $1,000 and $2,000 and/or imprisonment of fifteen (15) days to six (6) months. The statute specifically authorizes each day of a continuing offense to be treated as a separate and distinct offense. ECL § 71-2303(2) . A court may, in lieu of criminal fines or conviction, order restoration of the wetland to its prior condition.

70.     In addition to the foregoing, activities conducted in or near a wetland which result in discharge, drainage, or runoff of matter into waters of the State may also violate the water pollution control measures established under NY. Env. Cons. L. § 71-0501, including "civil penalties of up to $25,000 per day for each violation and criminal penalties."

## SANITARY CODE VIOLATIONS
### Sandbar, Lessing, Namresi, SCDHS, Suffolk County, Dawydiak, New York

71.     Defendants have violated the New York State Sanitary Code, §760-1351, and Suffolk County Sanitary Codes §760-502 and §760-504, in connection with the premises located at 37 Main Street and 53-55 Main Street in Cold Spring Harbor, New York 11724.

72.     Defendants Sandbar's and Namresi's sewage spills, leaks, overflows and excessive sewage density load in a limited area have resulted from a failure to construct, install, maintain, renovate, and otherwise conform the sanitary systems located at 37 Main Street and 53-55 Main Street in Cold Spring Harbor, New York 11724 to sufficiently comply with the New

York State and Suffolk County Sanitary Codes.

73.     Defendant Sandbar's sewage spills, leaks and overflows have resulted from a failure to adhere to, and comply with, the Suffolk County Department of Health Services variance granted May 19, 2014.

74.     Defendant Sandbar and its principal, Mark Lessing, is liable for the sewage spills, leaks, and overflows resulting from its failures, acts, and omissions pursuant to the Declaration of Covenants and Restrictions, personally acknowledged by Stephen Lessing as principal owner and the managing member of Oyster Bay Management Co., LLC, on June 30, 2014.   The protected DEC wetlands have been contaminated by sewage overflows and the ecosystem has been impacted by the Sandbar's continued use of its' failing sanitary system which has been documented as failing for years.

75.     Despite having knowledge of such overflows, Sandbar and Namresi, since at least June 20, 2018, continue to operate with the failing and nonconforming sanitary systems.  Suffolk County, individually and by and through the SCDHS and Walter Dawydiak, has failed to enforce the New York State Sanitary Code, §760-1351, and Suffolk County Sanitary Codes §760-502 and §760-504, and such violations are ongoing and continuing in nature.

76.     Defendants ongoing acts and omissions have interfered with the quality of life of the Spring Street Residents, endangered the health and welfare of the Spring Street Residents, including Plaintiffs, and resulted in negative economic damages, including adverse affects upon the DEC protected wetlands and values of Plaintiffs' residences as a result of the ongoing activities.  Sandbar continues to operate with a known failing sanitary system that their own expert has acknowledged is contaminating groundwater.  The damage to the protected DEC wetlands must be restored.  Also, the noxious fumes, sanitary pumping in excess of four (4) to

seven (7) times per week on Spring Street and sewage overflow which continues to date (due solely to Suffolk County, SCDHS, DEC and EPA's failure to act) has resulted in economic damage to Plaintiff and their respective properties.

## VIOLATION OF THE CLEAN WATER ACT
### Sandbar Restaurant, Namresi Construction, Suffolk County, New York

77.     Defendants Sandbar, Lessing's and Namresi have discharged and continue to discharge sewage into the navigable waters and tributary streams of Cold Spring Harbor and Long Island Sound in violation of the Clean Water Act.

78.     Each of Defendants Sandbar, Lessing's and Namresi's sewage discharge and overflows have caused pollutants to flow into the waters of the United States, constituting a separate violation of Section 301(a) of the Clean Water Act.

79.     Significantly more discharges of sewage than those presently known will likely be discovered through enforcement of this action and, each such additional sewage discharge is a separate Clean Water Act violation.

80.     Defendant's discharges of sanitary sewage to the navigable waters and tributary streams of Cold Spring Harbor and Long Island Sound are ongoing and continuous.

81.     Despite having knowledge of such sewage discharge by Defendants Sandbar, Lessing's and Namresi for years, Suffolk County and the SCDHS has failed to enforce the New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; and the provisions of the Clean Water Act.

82.     Despite having knowledge of such sewage discharge by Defendants Sandbar, Lessing's and Namresi for years, the New York Department of Environmental Conservation has failed to enforce the New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes

§760-502 and §760-504; provisions of the New York Environmental Conservation Law and Freshwater Wetlands Act, provisions of the Clean Water Act, and the April 4, 1984 EPA-DEC Enforcement Agreement.

83.  By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties pursuant to the Clean Water Act sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d), 1365(a), occurring from at least June 20, 2018 to the present.

84.  By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties pursuant to the New York Consolidated Laws, Environmental Conservation Law, Sections 71-2303, *et seq.*, occurring from at least June 20, 2018 to the present.

85.  An action for declaratory judgment is authorized by 28 U.S.C. § 2201.

86.  An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiffs and the public for which harm they have no other plain, speedy, or adequate remedy at law.

### VIOLATION OF THE STATE ADMINISTRATIVE PROCEDURE ACT
### Suffolk County, Walter Dawydiak

87.  The New York State Administrative Procedure Act governs the adoption of rule and regulations that affect the public and "guarantees that the actions of administrative agencies conform with sound standards developed in [the] state," and "insures that equitable practices will be provided to meet the public interest."

88.  The Administrative of Code for Suffolk County, New York provides for an Environmental Bill of Rights to be upheld by its Council on Environmental Quality.

89.     The Administrative Code for Suffolk County, New York further establishes the Department of Health Services and grants certain powers, duties, and responsibilities with regard to the public health of the people of Suffolk County, including, but not limited to general sanitation and environmental controls. *See*, Suffolk County Administrative Code, Article IX, §§ A9-2(A)(2)(g), A9-2(E), and A9-5.

90.     Article IX, § A9-2(E) of the Administrative Code further establishes a Division of Environmental Quality, "the head of which shall be the Director of Environmental Quality" who is "responsible for the environmental health of the people of Suffolk County" including, but not limited to, pollution control (both water and air), waste management, pollution prevention and abatement, comprehensive planning for sewage disposal facilities, fresh and marine water monitoring and control, monitoring and protecting the ecological integrity of the marine environment, including but not limited to inland fresh waters, open spaces and wetland."

91.     According to Suffolk County's website, The Suffolk County Department of Health Services "promotes wellness and protects the public's health and environment."

92.     As stated in Articles 7 and 12 of the Suffolk County Sanitary Code, "it is the policy of the County of Suffolk to maintain its water resources as near to their natural condition of purity as reasonably possible."

93.     As provided in the Suffolk County Department of Health Services' Standard Operating Procedures, the Suffolk County Sanitary Code provides for the goal of maintaining the County's water resources, further providing for remedial actions and clean up measures to "ensure reasonable protection for public health and the environment."

94.     At all times relevant, Defendant Suffolk County owed a duty to uphold and act in accordance with the New York State Sanitary Code and Suffolk County Sanitary Code, and to

meet the requirements of the New York State Department of Environmental Conservation and the United States Environmental Protection Agency, as further established and set forth in the Suffolk County Department of Health Services' Standard Operating Procedures.

95.    At all times relevant, Defendant Walter Dawydiak served as the Director of Environmental Quality, owing a duty to act in accordance with the New York State Sanitary Code and the Suffolk Sanitary Code, and to meet the requirements of the New York State Department of Environmental Conservation and the United States Environmental Protection Agency, as further established and set forth in the Suffolk County Department of Health Services' Standard Operating Procedures.

96.    The SCDHS, and Walter Dawydiak personally, were advised of the Sandbar restaurant's failing sanitary system and continued sewage overflow observed emanating from the Sandbar sanitary system.

97.    SCDHS and Dawydiak have known since at least May 19, 2014, the Sandbar's sanitary system does not comply with the standards of the New York State Sanitary Code or the Suffolk County Sanitary Code.

98.    SCDHS and Dawydiak issued a variance on May 19, 2014, permitting the Sandbar restaurant to operate in violation of the New York State Sanitary Code and Suffolk County Sanitary Code.

99.    The Sandbar restaurant is operating in violation of the New York State and Suffolk County Sanitary Codes, using a sanitary system which overflows and leaks, with sewage observed seeping from the Sandbar driveway onto Spring Street, into the DEC protected wetlands, Cold Spring Harbor and the Long Island Sound.

100.    In addition to numerous reports and complaints to the SCDHS and Walter

Dawydiak, inspections conducted by the Suffolk County Department of Health Services as early as June 20, 2018 have confirmed the active failure and overflows of the Sandbar's failed sanitary system.

101.   On December 19, 2018, the Sandbar was fined by the Suffolk County District Court for its violations, for which it was required to pay fines totaling $1,500 and a $75.00 fee.

102.   Additionally, a hearing was conducted January 17, 2019, as the Sandbar's failing sanitary system continued to overflow and leak down its driveway onto Spring Street, into the DEC protected wetlands, Cold Spring Harbor and the Long Island Sound in violation of the CWA

103.   Further reports and complaints have been made to the SCDHS and Walter Dawydiak regarding the effects, consequences, and damages resulting from Sandbar's failing sanitary system.

104.   Inspections conducted by the SCDHS, revealed sewage actively overflowing from the Sandbar driveway, with sewage, "slowing seeping up through gravel driveway at a downward sloping section of driveway leading north to Spring Street.

105.   Despite the complaints and evidence provided to the SCDHS and Dawydiak concerning the ongoing violations, the Sandbar restaurant was permitted to continue its operations and Sandbar's failing sanitary system remains operating in violation of the State and County Codes.

106.   Moreover, failing to address the failing sanitary system and in disregard of its own evidence of sewage overflowing and "seeping up through the gravel driveway," the SCDHS advised the Sandbar to cover the overflow with multiple layers of gravel, which were compacted with commercial machinery and are in excess of approximately right (8) inches, and to pump the

failing sanitary system which has been occurring for years a minimum of four (4) times per week and up seven (7) times per week.

107.    Walter Dawydiak co-authored The Suffolk County Department of Health Services Standards for Approval of Plans and Construction for Sewage Disposal Systems for Other Than Single-Family Residents dated December 29, 2017 (the "SCDHS Standards"), which states that "the purpose of these standards is to provide a means for achieving protection of the groundwater from excessive contaminant loading and to assure a safe, sanitary means of disposing of waste water."

108.    As stated herein, pursuant to the SCDHS standards and codes, and the SCDHS standards authored by Dawydiak himself, the Sandbar system is "failing" and yet the Sandbar restaurant continues to remain in operation.

109.    Furthermore, on or about December 12, 2019, the Sandbar restaurant submitted an application to the SCDHS seeking a second variance to extend its failing commercial sanitary system onto the property owned by Namresi at 37 Main Street.

110.    The Suffolk County Sanitary Code, authored by Walter Dawydiak, specifically prohibits the expansion of sanitary systems onto neighboring properties, to wit, the Site Condition Requirements of Section IX require that, "a) sewage disposal systems be located on land owned by the application and b) on the same parcel as the building.

111.    Furthermore, SCDHS and Walter Dawydiak knows or, acting within the course and scope of their respective offices, should know that Namresi's sanitary system at 37 Main Street is designed to provide for residential waste management, and that it was never upgraded to commercial as required by and in accord with the County and New York State codes.

112.    In addition to the foregoing, SCDHS and Walter Dawydiak, individually, have

been advised that the Application for Sewage Disposal Facilities and Water Supply Systems for Other Than Single Family Residences submitted by Mark Lessing on December 12, 2019, contains false statements and material misrepresentations (submitted under penalty of perjury).

113.   On May 22, 2020 the Sandbar restaurant's retained expert at H2M by Christopher Weiss, PE advised the SCDHS by written communication to Mr. Knepper (SCDHS) of the direct contamination of the groundwater by the Sandbar's existing failing sanitary system, advising the following:

> "The existing wicks under the original site will continue to channel upwelling groundwater from the lower aquifer towards the surface in the area of the old leeching field. The upwelling water, as soon as it can, will start to flow by gravity towards the aptly named Spring Street, in the dominant direction of groundwater flow".

Accordingly, Sandbar's own expert has acknowledged and has notified SCDHS of the failing sanitary system and the continued ongoing contamination of the groundwater below the leeching fields of the Sandbar and the contamination of the Spring Street residential area.

114.   Despite the foregoing, The SCDHS, DEC and EPA have failed to escalate or pursue any further remedy to address the illegal failing sanitary system discharges of the Sandbar into the protected DEC wetlands or underground natural springs that feed Cold Spring Harbor and Long Island Sound in violation of the CWA and FWA.

115.   Instead of escalating or pursuing further remedies to address the Sandbar's continued and ongoing illegal discharges from its failing sanitary system, SCDHS and Walter Dawydiak are permitting a second variance to the Sandbar restaurant to operate in violation of the New York State Sanitary Code and Suffolk County Sanitary Code, directly contributing to Sandbar's and Namresi's ongoing violations of the CWA and FWA.

116.    SCDHS and Walter Dawydiak have failed to competently and impartially investigate and enforce the repeat and ongoing violations resulting from continued operation of the Sandbar restaurant and its failing sanitary system.

117.    The actions of SCDHS and Walter Dawydiak, individually and jointly, have condoned and encouraged the ongoing violations of the Sandbar and Namresi.

118.    The SCDHS has failed to hold Walter Dawydiak accountable under the New York State Administrative Procedures Act, effectively ratifying the actions of Walter Dawydiak.

119.    Pursuant to the doctrine of Respondent Superior, SCDHS is vicariously liable for the negligent acts of Walter Dawydiak made within the scope of his employment as Director of Environmental Quality for the Suffolk County Department of Health Services.

120.    Because Defendants SCDHS and Walter Dawydiak have unreasonably failed to perform their ministerial duties pursuant to the New York Sanitary Sewer Code, Suffolk County Sanitary Sewer Code, the Suffolk County Department of Health Services' Standard Operating Procedures, and to timely comply with the CWA and FWA they have violated the New York State Administrative Procedure Act.

121.    Walter Dawydiak is not entitled to governmental immunity for his individual breaches of the New York State Administrative Procedures Act in failing to properly perform his ministerial duties under the Suffolk County Sanitary Sewer Code and in accordance with the Suffolk County Department of Health Services' Standard Operating Procedures.

122.    Defendants' negligence and failure to undertake actions sufficient to meet the water quality, living resource, vital habitat, and contaminant goals of the New York Sanitary Sewer Code, Suffolk County Sanitary Sewer Code, and Freshwater Wetlands Act were arbitrary and capricious.  Accordingly, Defendants SCDHS and Walter Dawydiak are subject to legal

action and enforcement pursuant to Article 78 of the New York CPLR, in connection with the premises located at 37 Main Street and 53-55 Main Street in Cold Spring Harbor, New York 11724.

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
**U.S. Environmental Protection Agency and its Regional Administrator**

123.    The Administrative Procedure Act allows citizens to challenge Federal agency decisions that are arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law. 5 U.S.C. § 706(2)(A).

124.    The Defendants' failure to undertake actions sufficient to meet the water quality, living resource, vital habitat, and contaminant goals of the EPA-DEC Agreements was arbitrary and capricious.

125.    Federal agency action and inaction which violate the terms of the Clean Water Act and EPA-DEC Agreement are "not otherwise in accordance with the law" and are *per se* arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

126.    Because the Defendants have unreasonably failed to timely comply with the Clean Water Act and EPA-DEC Agreement and have acted arbitrarily and capriciously, they have violated the Administrative Procedure Act. Thus, the United States is subject to suit. 5 U.S.C. §§ 701, 702.

### VIOLATIONS OF NEW YORK PENAL LAW
**Defendant Mark Lessing**

127.    Defendant Mark Lessing violated New York Penal Law § 175.35, offering a false instrument for filing when he tendered the sworn Application for Sewage Disposal Facilities and Water Supply Systems for Other Than Single Family Residences submitted to Suffolk County Department of Health Services on or about December 12, 2019, knowing such sworn application

contained false statements and material misrepresentations to effectuate a second additional variance from the SCDHS to extend the Sandbar's failing commercial sanitary system onto the property owned by Namresi at 37 Main Street.

128.   Defendant Mark Lessing violated New York Penal Law § 210.45 when he issued a false written statement by knowingly and willfully executing the sworn Application for Sewage Disposal Facilities and Water Supply Systems for Other Than Single Family Residences submitted on or about December 12, 2019 knowing such application contained false statements and material misrepresentations to effectuate a second additional variance from the SCDHS to extend the Sandbar's failing commercial sanitary system onto the property owned by Namresi at 37 Main Street.

129.   Defendant Mark Lessing violated New York Penal Law §210.15, Perjury in the First Degree, when he executed the sworn Application for Sewage Disposal Facilities and Water Supply Systems for Other Than Single Family Residences submitted on or about December 12, 2019 knowing such application contained false statements and material misrepresentations to effectuate a second additional variance from the SCDHS to extend the Sandbar's failing commercial sanitary system onto the property owned by Namresi at 37 Main Street

130.   Specifically, in the December 2019 application, Mark Lessing swore under penalty of perjury that, "37 Main Street and 53-55 Main Street are owned by a single entity which owns the Sandbar restaurant," knowing at the time of such statement that the properties at issue are not owned by a single entity as current tax and property records show Namresi Construction, Inc. owns the property located at 37 Main Street, and Oyster Bay Management, Inc. own the property located at 53-55 Main Street (Sandbar). Accordingly, Mark Lessing, the Sandbar, and Lessing's Defendants do not own, operate, or have related authority to seek any

material action involving the property located at 37 Main Street;

131.    At the time such statement was made, Mark Lessing knew the Suffolk County Sanitary Code specifically prohibits the expansion of sanitary systems onto neighboring properties, requiring that "a) sewage disposal systems be located on land owned by the application and b) on the same parcel as the building.  In the December 12, 2019 application, Mark Lessing swore under penalty of perjury that, the total "Gross Floor Area of [the] Building(s)" is 7,049 square feet."

132.    At the time such statement was made, Mark Lessing knew that the gross floor area of the Sandbar alone is approximately seven thousand forty-nine (7,049) square feet and the commercially operated building located on the property of 37 Main Street, is approximately three thousand (3,000) square feet for a total of approximately ten thousand forty-nine (10,049) square feet [almost fifty percent (50%) more commercial square feet than represented under oath in the application].  The correct total "Gross Floor Area of Buildings" on the two (2) properties in question exceeds no less than ten thousand (10,000) square feet.

133.    In the December 12, 2019 application, Mark Lessing swore under penalty of perjury that the Gallons Per Day of Sewage Discharge is reflected as 2,550 gpd for both properties - Sandbar and Namresi.

134.    At the time such statement was made, Mark Lessing knew the "Gallons Per Day of Sewage Discharge" represented in the application does not account for any of the gallons per day sewage discharge from the commercially-operated building located on the property of 37 Main Street.  The two thousand five hundred fifty (2,550) gpd reflects the Sandbar restaurant alone.

135.    In the December 12, 2019 application, Mark Lessing swore under penalty of

perjury that, The "Total Area of Parcel" is 0.61 acres.

136.    At the time such statement was made, Mark Lessing knew the reported "Total Area of Parcel" of 0.61 acres upon which the application was brought was inaccurate as it does not account for a single parcel, but for the combined area of both parcels of land located at 37 Main Street and 53-55 Main Street which are owned and operated by two (2) separate entities.

137.    The misrepresentations, sworn to and submitted under penalty of perjury by Mark Lessing intentionally mislead and misinform the SCDHS to effectuate a second additional variance for the sole benefit of the Sandbar and Namresi without consideration of the environmental impacts to the designated DEC protected wetlands, the underground natural springs, or the waters into which they feed specifically Cold Spring Harbor and the Long Island Sound, in violation of the CWA, FWA, New York State Sanitary Code, §760-1351, and Suffolk County Sanitary Codes §760-502 and §760-504.

## RELIEF REQUESTED

Plaintiffs respectfully request that this Honorable Court grant the following relief:

a) Declare Defendant Oyster Bay Management Co, LLC to have violated and to be in violation of the New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for the illegal discharges and sanitary system overflows of the Sandbar restaurant since at least June 20, 2018;

b) Declare Lessing's Food Service Management Corp. to have violated and to be in violation of the New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for the illegal discharges and sanitary system overflows of the Sandbar restaurant since at least June 20, 2018;

c) Declare Lessing's Franchise Group to have violated and to be in violation of the New

York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for the illegal discharges and sanitary system overflows of the Sandbar restaurant since at least June 20, 2018;

d) Declare Lessing's NY Corp. to have violated and to be in violation of the New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for the illegal discharges and sanitary system overflows of the Sandbar restaurant since at least June 20, 2018;

e) Declare Lessing's Restaurant Services, Inc. to have violated and to be in violation of the New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for the illegal discharges and sanitary system overflows of the Sandbar restaurant since at least June 20, 2018;

f) Declare Lessing's, Inc. to have violated and to be in violation of the New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for the illegal discharges and sanitary system overflows of the Sandbar restaurant since at least June 20, 2018;

g) Declare Defendant Mark Lessing to have violated New York Penal Law § 175.35 in offering a false instrument for filing with a public authority, public servant, or public office in order to fraudulently secure approval of an Application for Sewage Disposal Facilities and Water Supply Systems for Other Than Single Family Residences executed on or about December 12, 2019;

h) Declare Defendant Mark Lessing to have violated New York Penal Law § 210.45 in offering a false written statement to the Suffolk County Department of Health Services in order to fraudulently secure approval of an Application for Sewage Disposal Facilities and Water

Supply Systems for Other Than Single Family Residences executed December 12, 2019;

i) Declare Defendant Mark Lessing to have committed Perjury in the First Degree, in violation of New York Penal Law § 210.15 by sworn execution of the Application for Sewage Disposal Facilities and Water Supply Systems for Other Than Single Family Residences on or about December 12, 2019, while knowing such application contained false statements and material misrepresentations, in order to fraudulently secure approval of second variance from the Suffolk County Department of Health Services;

j) Declare Namresi Construction and Development Corp. to have violated and to be in violation of the New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for the illegal discharges occurring at and from 37 Main Street in Cold Spring Harbor, New York 11724;

k) Issue a declaratory judgment against the State of New York, finding it to have acted in violation of the New York State Administrative Procedure Act, NY State APA § 102, *et. seq.*, he New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; the Freshwater Wetlands Act, NY Env. Cons. L. § 24-0101, *et. seq.*, and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for the New York Department of Environmental Conservation's failure to properly investigate, enforce, and assert appropriate penalties for the ongoing illegal discharges and sanitary system overflows of 37 Main Street and 53-55 Main Street in Cold Spring Harbor, New York 11724;

l) Issue an order against the State of New York requiring enforcement of its duties by and through the New York Department of Environmental Conservation under Article 78 of the New York CPLR, in connection with the premises located at 37 Main Street and 53-55 Main Street in Cold Spring Harbor, New York 11724;

m) Issue a declaratory judgment against Suffolk County, New York, finding it to have acted in violation of the New York State Administrative Procedure Act, NY State APA § 102, *et. seq.*, he New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; the Freshwater Wetlands Act, NY Env. Cons. L. § 24-0101, *et. seq.*, and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for its failure to properly investigate, enforce, and assert appropriate penalties for the ongoing illegal discharges and sanitary system overflows of Namresi Construction and Sandbar restaurant;

n) Issue an order against Suffolk County requiring enforcement of its duties by and through the Suffolk County Department of Health Services under Article 78 of the New York CPLR, in connection with the premises located at 37 Main Street and 53-55 Main Street in Cold Spring Harbor, New York 11724;

o) Issue a declaratory judgment against Walter Dawydiak, finding him to have acted in violation of his ministerial duties under the New York State Administrative Procedure Act, NY State APA § 102, *et. seq.*, and his actions in violation of New York State Sanitary Code, §760-1351; Suffolk County Sanitary Codes §760-502 and §760-504; the Freshwater Wetlands Act, NY Env. Cons. L. § 24-0101, *et. seq.*, and the Clean Water Act, 33 U.S.C. § 1251, *et seq.* for its failure to properly investigate, enforce, and assert appropriate penalties for the ongoing illegal discharges and sanitary system overflows of Namresi Construction and Sandbar restaurant;

p) Issue an order against Walter Dawydiak requiring enforcement of his ministerial duties as Director of Environmental Quality for the Suffolk County Department of Health Services 8under Article 78 of the New York CPLR, in connection with the premises located at 37 Main Street and 53-55 Main Street in Cold Spring Harbor, New York 11724;

q) Issue a declaratory judgment declaring that the U.S. Environmental Protection Agency

violated the Clean Water Act and the Administrative Procedures Act by failing to perform their nondiscretionary duties under the CWA and to implement and administer the Act in a manner that complies with the Administrative Procedure Act;

r) Immediately enjoin Defendants from operating, and allowing the operation of, the failing and non-compliant sanitary systems at 37 Main Street and 53-55 Main Street in Cold Spring Harbor, New York 11724, and from further discharging sanitary sewage into the freshwater wetlands and navigable waters and tributary streams of Cold Spring Harbor and Long Island Sound;

s) Enjoin Defendants Oyster Bay Management, Sandbar, and the Lessing's Defendants from extending the Sandbar restaurant's sanitary system onto neighboring properties in violation of County Codes;

t) Assess civil penalties against Defendants Sandbar, Lessing's, and Namresi of up to o $37,500 per day per violation for violations occurring on or before June 20, 2018, and $55,800 per day per violation for violations occurring after June 20, 2018. 40 C.F.R. § 19.4 (effective Jan. 13, 2020);

u) Allow Plaintiffs to recover all economic and non-economic damages available to them resulting from the illegal sewage discharges and overflows of Namresi;

v) Allow Plaintiffs to recover all available economic and non-economic damages to which they are entitled from each Defendant as a result of the illegal sewage discharges and sewage overflows of the Sandbar;

w) Immediately enjoin the Defendants from proceeding with the second variance sought in the falsely sworn Application for Sewage Disposal Facilities and Water Supply Systems for Other Than Single Family Residences submitted by Mark Lessing on or about December 12,

2019, which will further violate the Suffolk County and SCDHS and New York State codes;

x) Ordering the Defendant's to remediate the damages sustained by the DEC protected wetlands on Plaintiff's properties specifically those wetlands located at 36 Spring Street (including those wetlands which abut Shore Road and Spring Street) and east along Spring Street.

y) Allow Plaintiffs to recover the reasonable fees, costs, and disbursements of this action, including attorney's fees with this litigation; and

z) Grant such further and additional relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs requests a trial by jury on all issues so triable.

Respectfully submitted November 19, 2022,

Jennifer L. Coden, Esq. (JC5573)
Law Offices of Jennifer L. Coden, PLLC
100 Crossways Park Drive West, Suite 212
Woodbury, New York 11797
Tel: 516.222.0007
Fax: 516.222.0088
Email: jcoden@jennifercodenlaw.com
Attorney for the Plaintiffs